**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Rick Davis Sr.

        v.                                Civil No. 18-cv-1246-SE-AJ

N.H. State Prison Warden

**REPORT AND RECOMMENDATION**

Rick Davis Sr., a prisoner at the New Hampshire State
Prison, filed a pro se petition for a writ of habeas corpus
under 28 U.S.C. § 2254, challenging his conviction and sentence
in State v. Davis, No. 219-2013-cr-00290 (N.H. Super. Ct.,
Strafford Cty. ("SCSC")) ("Criminal Case"). Before the Court is
the respondent Warden's motion for summary judgment (doc. no.
97), which incorporates by reference Mr. Davis's previous motion
for summary judgment (doc. no. 71), which was denied without
prejudice. The Court finds that the entirety of document no. 71
is incorporated into document no. 97. Davis objects to the
arguments asserted in both motions for summary judgment, in
multiple filings.  See Doc. nos. 74-76, 79-80, 99-101.

The motion for summary judgment is referred to the
undersigned Magistrate Judge for a Report and Recommendation
("R&R") as to disposition. For the reasons stated herein, the
District Judge should grant the Warden's motion for summary
judgment as to all of the claims remaining in this action, which

the Court has identified as Claims 1, 2, 3, 5, 6(b)-(d), 6(f)-(g), 11, and 12, and dismiss the petition for a writ of habeas corpus.[1]

## Background[2]

### I.   Factual Background

In early 2013, Davis's parole officer obtained a warrant for Davis's arrest on a parole violation. While Davis was attempting to evade arrest, he drove a Ford Explorer in the wrong direction on the highway and on exit and entrance ramps to the highway. He later surrendered to authorities and was charged with disobeying an officer and reckless conduct with a deadly weapon (the Ford Explorer), in addition to the parole violation.

Before trial on those charges, Davis was incarcerated at the Strafford County House of Corrections ("SCHC"), where he made a series of recorded phone calls. During calls to his sister, Roberta Davis ("Roberta"), Davis asked her to pressure

---

[1] The claims the Court identified as Claims 8 and 9 were dismissed on preliminary review. See Sept. 25, 2019 Order (doc. no. 14) (approving Aug. 27, 2019 R&R (doc. no. 12)). Claims 4, 6(a), 6(e), 7, and 10, were dismissed in response to motions to amend (doc. nos. 52, 54) Davis filed. See Mar. 31, 2023 Order (doc. no. 93).

[2] Except where otherwise indicated, the background facts are undisputed or derived from the factual determinations in the orders issued in Davis's state court proceedings, which are presumed to be correct. See 28 U.S.C. § 2254(e)(1).

his girlfriend, Kaleena Delorme ("Delorme"), "to withhold
information or be unavailable to testify." Crim. Case, Dec. 8,
2014 Trial Tr., Vol. I, 38-39. Davis also told Roberta not to
talk to the police. Id., Aug. 15, 2014 Order (doc. no. 71-2, at
4). Davis made other statements during recorded phone calls
which implied he wanted the Ford Explorer "to disappear." Id.,
Dec. 10, 2014 Trial Tr., Vol. III, 549-55; id., Dec. 11, 2014
Trial Tr., Vol. IV, 682, 708-11. Based on his statements during
those calls, Davis was charged with criminal solicitation of
falsifying physical evidence, criminal solicitation of witness
tampering, and witness tampering. The SCSC granted the State's
motion to join the new charges with the existing charges of
disobeying an officer and reckless conduct.


II.    Procedural History of Criminal Case

        In 2014, before Davis's trial, the SCSC granted Davis's
counsel's motion to have Davis evaluated for competency. Dr.
Dennis Becotte conducted the evaluation.  Dr. Becotte concluded
that Davis was competent to stand trial.

        Superior Court Judge Steven Houran issued a number of
pretrial rulings in Davis's case. Because Judge Houran had
previously recused himself from a post-conviction civil
proceeding brought by Davis, which concerned an unrelated
criminal case, Davis discussed with his trial counsel, Carl

3

Swenson, whether to move to disqualify Judge Houran in the pending criminal case.  Despite their discussions, Attorney Swenson did not move to have Judge Houran disqualified. Nevertheless, for unspecified reasons, Judge Houran recused from the case.

Superior Court Judge Charles Temple presided over Davis's jury trial in December 2014. The witnesses at trial included Davis and Delorme, Delorme's mother, and two Deputy United States Marshals who were involved in pursuing Davis when he fled in the Ford Explorer. Davis testified that he was not driving the Ford Explorer during the pursuit, but that he was reclining in the passenger's seat out of sight while his friend, Tommy Pare, drove. Pare, however, had died in June 2013, a year and a half before the December 2014 jury trial.  Delorme, her mother, and the two Deputy Marshals each testified that they saw Davis driving the Ford Explorer immediately before the pursuit began.

At trial, the State relied on Davis's statements in the recorded calls from the SCHC to support the charges of solicitation of falsifying physical evidence, solicitation of witness tampering, and witness tampering. Davis testified that he was not tampering with witnesses or seeking to falsify evidence during those calls because, in general, he was just giving "legal advice," telling friends and family to invoke their rights to remain silent and speak with a lawyer, and that

4

he had no criminal intent in making any of the statements. Id.,
Dec. 12, 2014 Trial Tr., Vol. V, 815.

After the State rested, the court dismissed one witness
tampering count and one solicitation of witness tampering count
for insufficient evidence. Over Attorney Swenson's objection,
the court instructed the jurors not to infer anything from the
dismissal of those charges. Attorney Swenson then asked for an
instruction that a "legal request or command telling someone to
invoke their right to counsel and remain silent is not witness
tampering." Id. at 792. The court denied that request. Attorney
Swenson made arguments in his closing that were consistent with
the requested (but denied) jury instruction, but made no
explicit reference to the dismissed charges.

Before jury deliberations began, the court chose two
alternate jurors and instructed the jury that the alternates,
chosen at random, would not deliberate unless called to replace
any regular jurors who could not complete deliberations in the
case. The court then called out a name, which the transcript
records as, Catherine "Brisher." Id. at 935. The clerk repeated
that name twice, first as "Boucher," and then as "Battista," but
when no one responded to those variant names and pronunciations,
the court said that there must have been a mistake. Id. When a
juror named "Catherine" caught the court's attention, the court
told her she was not the person being called, although her full

name was Catherine Boucher. Id. The court then chose two new
alternates. Id. at 935-36. Catherine Boucher was not selected as
an alternate and, instead, served as one of the twelve
deliberating jurors. Attorney Swenson did not move to have
Boucher disqualified.

The jury found Davis guilty of reckless conduct, disobeying
an officer, witness tampering, criminal solicitation of witness
tampering, and criminal solicitation of falsifying physical
evidence. After considering Davis's mental health history and
other mitigating factors cited by Attorney Swenson at
sentencing, Judge Temple imposed committed sentences totaling
10½ to 35 years, explaining that the long "tail" of the sentence
addressed the need for mental health treatment and supervision
after Davis's release.

Davis, through his appellate counsel, New Hampshire
Appellate Defender Christopher Johnson, appealed his convictions
for witness tampering and solicitation of witness tampering to
the New Hampshire Supreme Court ("NHSC"). See State v. Davis,
No. 2015-0248, 2016 N.H. LEXIS 49, at *1, 2016 WL 3947388, at *1
(N.H. May 17, 2016) ("Davis I"). Attorney Johnson argued on
Davis's behalf that the trial court erred in instructing the
jury not to infer anything from the dismissal of the charges,
and in prohibiting Attorney Swenson from arguing in his closing
that the dismissed charges could be used to measure "the legal

6

definition of witness tampering." Id., Nov. 19, 2015 Appellant's
Br., at i (doc. no. 39-1, at 40). The NHSC affirmed Davis's
convictions, finding no error in the jury instructions and
concluding that Attorney Swenson had not adequately preserved
for appellate review the issue of the SCSC's restriction on his
closing argument. See id., 2016 N.H. LEXIS 49, at *6-72016 WL
3947388, at *3.

In 2016, Davis filed a motion for a new trial, asserting
due process claims and claims of ineffective assistance of trial
counsel. The SCSC appointed Attorney Caroline Brown to represent
Davis in that matter. After a hearing, at which only Attorney
Swenson testified, the SCSC denied Davis's motion for a new
trial. The NHSC declined Davis's discretionary appeal of that
SCSC Order.  See State v. Davis, No. 2018-0324 (N.H. July 17,
2018) (doc. no. 39-3, at 85).

In 2019, Davis filed a state habeas petition in Merrimack
County Superior Court ("MCSC") asserting, among other things,
claims of actual innocence and a due process violation based on
Judge Houran's failure to recuse himself from Davis's criminal
case. The MCSC denied that petition, citing the reasons in the
respondent's brief in opposition to Davis's motion. Davis did
not appeal.[3]

---

[3] In 2020-2021, Davis filed additional motions seeking post-
conviction relief in the state courts, including a motion

In July 2021, Davis filed a state habeas petition in the NHSC, seeking to invoke that court's original jurisdiction over his claims challenging his conviction and sentence. The NHSC denied that petition without prejudice, expressly preserving Davis's ability to file a petition in the Superior Court, and to seek discretionary review of the Superior Court's decision in the NHSC.

Davis filed a second state habeas petition, which was transferred to the Coös County Superior Court ("CCSC") in 2021. The CCSC denied Davis's petition without a hearing, incorporating by reference the reasons for denial stated in the respondent's motion to dismiss the petition. See Dec. 20, 2021 Order, Davis v. Warden, N.H. State Prison, No. 217-2021-CV-00445 (N.H. Super. Ct., Cöos Cty.) (doc. no. 59-3) (citing id., Nov. 2, 2021, Resp't's/Def.'s Answer to Pet'r's Pet. For Writ of Habeas Corpus and Mot. to Dismiss (doc. no. 59-1)). The NHSC declined Davis's appeal of that matter. See Davis v. Warden, N.H. State Prison, Case No. 2022-0027 (N.H. Mar. 15, 2022) (doc. no. 51-1).

---

raising claims regarding evidence of the Ford Explorer's tinted windows. The Superior Court appointed counsel to represent Davis in those proceedings and then granted Davis's motions to withdraw his claims without prejudice.

III.  Davis's § 2254 Petition

In 2018, Davis filed his § 2254 petition here. This court, noting that some of the claims in the petition were unexhausted, stayed the § 2254 action so that Davis could complete exhaustion of his state court remedies. See Aug. 27, 2019 Order (doc. no. 13). After Davis reported that he had finished litigating his claims in the state courts, this Court granted his motion to lift the stay.  See Nov. 3, 2020 Order.

The Warden filed an answer (doc. no. 61) to the petition and a motion for summary judgment (doc. no. 71). The court subsequently granted Davis's motion to amend his claims to add a claim, identified as Claim 12, that had been recently litigated in state court, and to withdraw his unexhausted claims (Claims 4(a), 4(b), 6(a), 6(e), 7, and 10).[4] See Doc. no. 93. The Warden now moves for summary judgment on the remaining claims in this case, specifically, Claims 1-3, 5, 6(b)-(d), 6(f)-(g), 11, and 12, which the Court has identified as follows:

> 1.    The trial court instructed the jury at the close of Davis's criminal trial not to infer anything from the court's mid-trial dismissal of two out of three witness tampering counts which had been read to the jury at the

---

[4] In general, this court cannot grant a § 2254 petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); see also Shinn v. Ramirez, 596 U.S. 366, 377 (2022). However, the court may deny unexhausted claims on the merits, under a de novo standard of review. See 28 U.S.C. § 2254(b)(2).

beginning of the case, where that limiting instruction stripped Davis of the ability to have the jury instructed on the definition of witness tampering which the court had applied in dismissing those charges, in violation of Davis's Fourteenth Amendment right to due process.

2.    The trial court's restriction on Davis's trial counsel's closing argument, with respect to evidence relating to the dismissed charges, violated Davis's Fourteenth Amendment right to due process.

3.    The trial court's failure to remove one of the jurors (Boucher) from jury deliberations, after finding out that she had originally been identified as an alternate juror, violated Davis's Sixth and Fourteenth Amendment rights to due process and a fair trial.

. . . .

5.    The failure of Superior Court Judge Houran to disqualify himself in Davis's criminal case, after disqualifying himself for undisclosed reasons in Davis's civil post-conviction proceeding concerning an unrelated criminal case, violated Davis's Sixth and Fourteenth Amendment rights to due process and a fair trial.

6.    Davis's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel during pretrial proceedings, at trial, and at sentencing, in that:

. . .

b.    Attorney Swenson failed to move for Judge Houran's recusal, after Judge Houran had recused himself in Davis's civil post-conviction proceeding concerning an unrelated criminal case;

c.    Attorney Swenson failed to move to sever the charges;

d.    Attorney Swenson failed to discuss the evidence relating to the dismissed charges in his closing argument;

. . .

10

f.    Attorney Swenson failed to investigate or move for Boucher's removal from jury deliberations, despite counsel's awareness that Boucher would have been an alternate juror but for a misunderstanding during the selection of alternates; and

g.    Attorney Swenson failed to provide the court with readily available psychiatric records in mitigation of Davis's sentence.

. . . .

11.  Davis's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of counsel on direct appeal, in that Davis's appellate attorney (operating under a potential conflict of interest due to the relationship between the New Hampshire Public Defender and the New Hampshire Appellate Defender) did not argue that trial counsel was ineffective, although evidence of ineffectiveness included:

a.    trial counsel's failure to present a defense theory to the jury (relating to Davis's intent to advise witnesses to speak with an attorney and/or Davis's lack of intent to tamper with witnesses); and

b.    trial counsel's failure to preserve certain issues for appeal (relating to the restriction on trial counsel's closing argument and the requested and denied jury instruction on the dismissed charges).

12.  Davis's conviction was obtained in violation of his Sixth Amendment right to the effective assistance of trial counsel, in that Attorney Swenson failed to properly preserve for appellate review his objection to the trial court's restriction of Attorney Swenson's closing argument.

## **Discussion**

I.  <u>Summary Judgment Standard</u>

A person incarcerated pursuant to a state court conviction and sentence may challenge that conviction and/or sentence by

filing a petition for a writ of habeas corpus alleging "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Id. § 2254(d).

The scope of federal habeas review of a state court decision under § 2254(d) is circumscribed by statute and caselaw. With respect to both legal and factual issues, federal review of a claim decided on the merits in the state courts is generally "limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see also 28 U.S.C. § 2254(d)(2); Shoop v. Twyford, 596 U.S. 811, 818-19 (2022).

The standard the court applies in reviewing federal claims under § 2254 depends on whether the state courts adjudicated the merits of those claims (or are presumed to have done so), whether the state courts provided reasons for their decisions, whether the state courts denied relief on the basis of a state

procedural rule, or whether the state courts altogether failed to rule on a federal claim presented to them. See Wilson v. Sellers, 584 U.S. ___, 138 S. Ct. 1188, 1192 (2018); Davila v. Davis, 582 U.S. 521, 527-28 (2017); Quintanilla v. Marchilli, 86 F.4th 1, 16 (1st Cir. 2023); Hodge v. Mendonsa, 739 F.3d 34, 41 (1st Cir. 2013).  The applicable standards range from deferential review of state court decisions that adjudicated the federal claims on the merits, see Wilson, 138 S. Ct. at 1192; to de novo review of federal claims that were presented to the state court but not decided on the merits, see Hodge, 739 F.3d at 41; and can include consideration of procedural default and whether there is cause therefor and prejudice therefrom, see Davila, 582 U.S. at 527-28.

In his motion for summary judgment, the Warden contends that some of Davis's claims were procedurally defaulted, many were waived, and all of the claims fail on the merits on de novo review. When, as here, the petitioner's claims do not survive summary judgment under the petitioner-friendly de novo standard of review, there is no need to consider other grounds to dismiss the claims. See Bourdon v. Warden, No. 19-cv-258-SE, 2022 WL 3228786, at *2 (D.N.H. Aug. 10, 2022) ("[T]he court will forego analyzing whether each of [petitioner]'s claims was procedurally defaulted, exhausted, raised but not addressed, or adjudicated on the merits in state court. Instead, the court will assume for

purposes of this order that the de novo standard of review applies to each of [petitioner]'s claims."), cert. of appealability denied sub nom., Bourdon v. Riendeau, No. 22-1661, 2023 WL 5601341, at *1 (1st Cir. Aug. 8, 2023); see also Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (habeas statute "does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) – whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law."); Teti v. Bender, 507 F.3d 50, 63 (1st Cir. 2007) (declining to determine whether District Court's de novo, rather than deferential, consideration of claim was correct, where federal habeas claim failed under either standard).

II. Davis's Remaining Claims

    A. Jury Instruction

In Claim 1, Davis challenges the trial court's jury instruction about the mid-trial dismissal of two of the witness tampering charges against him, arguing that the instruction violated his right to due process. The trial court instructed the jury as follows:

> Members of the jury, I have removed from your consideration certain indictments that were read to you at the outset of this case. You are not to speculate on my reasons for doing so, nor are you to draw any inferences whatsoever for or against either

> party. The charges explained to you in these
> instructions are the only charges presented to you for
> your consideration and verdicts.

Davis I, 2016 N.H. LEXIS 49, at *3, 2016 WL 3947388, at *1. The
trial court then denied Davis's request to add, to the
instructions on witness tampering: "'A legal request or command
to someone to invoke their right to counsel and remain silent is
not witness tampering.'" Id. (citation omitted). Davis argues
that the trial court's instruction, without his additional
requested instruction, prevented him from presenting his theory
of defense, specifically, that his recorded statements were
intended as legal advice, and uttered without criminal intent,
and therefore did not constitute witness tampering. He also
contends that his suggested instruction provides part of the
legal context for the charge of witness tampering.

   As discussed above, the court here conducts a de novo
review of Claim 1 on the merits, applying the federal standard
for evaluating a jury instruction alleged to have resulted in a
due process violation. "Before a federal court may overturn a
conviction resulting from a state trial in which [a challenged]
instruction was used, it must be established not merely that the
instruction is undesirable, erroneous, or even 'universally
condemned,' but that it violated some right which was guaranteed
to the defendant by the Fourteenth Amendment." Cupp v.
Naughten, 414 U.S. 141, 146 (1973).

> As the Supreme Court has stated, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (footnote omitted).

Niziolek v. Ashe, 694 F.2d 282, 290-91 (1st Cir. 1982) (citation omitted).

In considering whether an instruction has rendered the trial fundamentally unfair, the Court has observed that a "single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-47. A Fourteenth Amendment due process violation may be found only where the challenged instruction "'so infected the entire trial that the resulting conviction violates due process.'" Middleton v. McNeil, 541 U.S. 433, 437 (2004) (citation omitted).

The instruction at issue in Claim 1 was a limiting instruction, designed to avoid the risk that the jury would draw an inappropriate inference from the dismissal of two charges to conclude that evidence was lacking to prove the remaining witness tampering charges in the case. Davis does not contend that the instruction itself violated due process. He argues instead that the court's instruction, without the additional requested instruction, stripped his counsel of the opportunity to present the defense theory that Davis was simply giving legal

advice, and lacked the requisite criminal intent to tamper with
witnesses, that would have been supported by his suggested
instruction.

The jury charge, as a whole, included instructions
regarding reasonable doubt, the burden of proof, and the
elements of witness tampering.[5] In that context, Davis's counsel
had a legal framework in which he could, and did, argue the
defense theory that Davis lacked criminal intent in the
statements giving rise to the witness tampering charge. As is
discussed more specifically in the next section, Davis's counsel
argued in closing that Davis was merely advising witnesses about
their legal right not to talk to investigators without counsel.
Davis has not shown that the instruction given by the trial
court, or the omission of his requested addition to that
instruction, prevented his counsel from presenting his theory of
defense, or rendered the trial fundamentally unfair.

---

[5] As the trial judge explained, Davis's requested
instruction, that a command or request for someone to invoke
their right to counsel and remain silent was not witness
tampering, was not necessarily a correct statement of the law.
While a simple statement advising of the right to an attorney
would not be witness tampering, in the context of this case, the
factual question was Davis's intent in giving that advice. See
Dec. 11, 2014 Trial Tr., Vol. IV, 783. Davis has not shown that
he (or any criminal defendant) has a constitutional right to a
jury instruction that gives an incorrect or incomplete statement
of the law. See Mathews v. United States, 485 U.S. 58, 63 (1988)
(defendant generally has a right "to an instruction as to any
recognized defense for which there exists evidence sufficient
for a reasonable jury to find in his favor").

Accordingly, Claim 1 fails to provide a basis for granting the § 2254 petition. The District Judge should grant the Warden's motion for summary judgment as to that claim.

### B. Closing Argument

Claim 2 is related to Claim 1. In Claim 2, Davis challenges the trial court's ruling that prohibited Attorney Swenson from arguing in his closing argument that the state had overcharged Davis, as demonstrated by the dismissed charges, and from using the dismissed charges as examples to show what conduct does not constitute witness tampering. Davis contends that the court's restriction constituted a violation of due process under the Fourteenth Amendment.

The Constitution gives criminal defendants the opportunity "to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986). Nevertheless, trial judges in criminal cases have "broad discretion" and "great latitude" in controlling counsel's closing arguments "to ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial." Herring v. New York, 422 U.S. 853, 862 (1975). Even an improper restriction on a defendant's closing argument is not structural error and instead is reviewed for harmlessness. See Glebe v. Frost, 574 U.S. 21, 23 (2014).

In this case, Davis has not shown that the trial court improperly restricted his attorney's closing argument. To the extent Attorney Swenson wanted to argue that Davis was not guilty of witness tampering because two of the witness tampering charges were dismissed, he has not shown that would have been appropriate argument in his case.[6] Further, despite the limitation imposed by the court, Attorney Swenson explained during closing that when Davis made the telephone calls, he was "dispensing legal advice." Dec. 12, 2014 Trial Tr., Vol. V, 877. Attorney Swenson, in his closing argument, also stated that "telling somebody to talk to a lawyer, rather [than] to investigators, is not witness tampering" and that when Davis said "don't say nothing to nobody" that statement is surrounded by advice to get a lawyer. Id. at 880-81. Attorney Swenson argued to the jury that Davis was telling people in those calls to invoke their constitutional right not to talk to investigators without a lawyer present and that there was reasonable doubt as to Davis's intent with regard to the witness tampering charges.

Davis has not shown that the court's restriction impaired his attorney's ability to present his defense. Even if the

---

[6] The dismissed charges arose from Davis's telephone conversation with his sister on September 15, 2013. The remaining charges arose from other telephone conversations.

restriction on closing had gone beyond the broad discretion
afforded to the trial court, which Davis has not shown, any
error was harmless as Attorney Swenson was able to argue Davis's
theory of defense, that he lacked criminal intent with regard to
the witness tampering charges.

Accordingly, Claim 2 fails to provide a basis for granting
the § 2254 petition.  The District Judge should grant the
Warden's motion for summary judgment as to that claim.


C. Failure to Remove a Juror

In Claim 3, Davis contends that the trial court violated
his Sixth and Fourteenth Amendment rights to due process and a
fair trial by allowing Boucher to participate in jury
deliberations after initially selecting her as an alternate.
Boucher, however, at the time alternates were being selected,
had "made it through the full voir dire process and was
impaneled . . [which] indicates that neither party believed that
her participation in the deliberating body would cause
irreparable harm to their case." Crim. Case, Apr. 12, 2018
Order, 12 (doc. no. 8-2, at 55).

"The Sixth Amendment guarantees 'the accused' the right to
a trial 'by an impartial jury.'" United States v. Tsarnaev, 595
U.S. 302, 312 (2022) . "A trial court protects the defendant's
Sixth Amendment right by ensuring that jurors have 'no bias or

prejudice that would prevent them from returning a verdict according to the law and evidence.'" Id. (quoting Connors v. United States, 158 U.S. 408, 413 (1895)). In addition,

> the Constitution presupposes that a jury selected from
> a fair cross section of the community is impartial,
> regardless of the mix of individual viewpoints
> actually represented on the jury, so long as the
> jurors can conscientiously and properly carry out
> their sworn duty to apply the law to the facts of the
> particular case.

Lockhart v. McCree, 476 U.S. 162, 183-84 (1986). When called upon to assess a juror's impartiality, the court considers "whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985) (internal quotation marks omitted).

All of the members of the jury panel chosen to hear Davis's case, were chosen by the same process, which Davis does not challenge. The jurors selected to hear Davis's case, including the alternates, were essentially indistinguishable up until the judge named the alternates, as they all had received the same instructions and admonishments, and had heard the same evidence and arguments. See United States v. Olano, 507 U.S. 725, 740 (1993).

Davis argues that Catherine Boucher demonstrated bias because she did not answer when her name was called as an alternate. The record shows, however, that Boucher actually

attempted to respond but was overlooked in the confusion around the alternate's name. More importantly, Davis provides no nonspeculative evidence that Boucher was biased or was otherwise unfit to serve as a juror. There is no suggestion of any outside influence on, or personal bias of, Boucher or any other deliberating juror in Davis's case. Put simply, Davis has not shown any factual basis to question Boucher's impartiality.

Accordingly, Claim 3 fails to provide a basis for granting the § 2254 petition. The District Judge should grant the Waren's motion for summary judgment as to that claim.

D. <u>Failure of Judge Houran to Recuse</u>

Davis alleges in Claim 5 that his rights to due process and a fair trial were violated when Judge Houran did not automatically recuse himself from the Criminal Case after he had recused himself in Davis's unrelated civil proceeding in the Carroll County Superior Court. Davis also states that he was friendly with someone who worked with Judge Houran in the Carroll County Superior Court, and that Judge Houran left the Criminal Case abruptly after presiding on pretrial matters.

"Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.'" Rippo v. Baker, 580 U.S. 285, 287 (2017) (citation omitted).

22

Adverse "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555 (1994). The recusal inquiry is objective and asks whether "the average judge in [the same] position is likely to be neutral, or whether there is an unconstitutional potential for bias." Williams v. Pennsylvania, 579 U.S. 1, 8 (2016) (internal quotation marks and citation omitted).

Davis contends that Judge Houran was unconstitutionally biased in his case, based only on Judge Houran's previous recusal in an unrelated case brought by Davis. Davis provides no reason for the previous recusal or any evidence that Judge Houran recused in the previous matter based on bias. Davis also provides no evidence to show that his friendship with someone who worked at the court in any way influenced Judge Houran or otherwise supported Judge Houran's recusal. Based on the summary judgment record, Davis has not shown that Judge Houran was actually biased or that, objectively, he should have recused himself from Davis's criminal case.[7]

Accordingly, Claim 5 fails to provide a basis for granting the § 2254 petition. The District Judge should grant the Warden's motion for summary judgment as to that claim.

---

[7] In fact, Judge Houran did recuse himself from Davis's criminal case prior to trial, and did not preside over Davis's trial, but nothing in the record reveals the reason for that decision.

E.    Ineffective Assistance of Trial Counsel

In Claims 6 and 12, Davis asserts six claims alleging that his trial counsel, Attorney Swenson, was constitutionally ineffective in representing him. In Claim 6, Davis argues that Attorney Swenson should have: moved for Judge Houran's recusal, moved to sever the traffic charges from the witness tampering charges, discussed the evidence of the dismissed charges in closing argument, investigated Boucher and sought her removal from the jury, and provided the court with Davis's psychiatric records for the purpose of mitigating his sentence. In Claim 12, Davis alleges that Attorney Swenson was ineffective in failing to preserve for appeal the issue of the court's restriction on his closing argument.

In Claim 11, Davis asserts that he received ineffective assistance of his appellate counsel, Attorney Johnson. Davis alleges that appellate counsel was constitutionally ineffective because he did not raise claims on direct appeal asserting that Attorney Swenson failed to provide Davis with the effective assistance of counsel at trial. Davis specifies that Attorney Johnson should have presented ineffective assistance of trial claims on appeal based on Attorney Swenson's failure to present a defense related to Davis's intent to commit the crime of

witness tampering, and Attorney Swenson's failure to preserve issues for appeal.

"To prevail on a Sixth Amendment claim alleging ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that his counsel's deficient performance prejudiced him." Andrus v. Texas, 590 U.S. ---, 140 S. Ct. 1875, 1881 (2020) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)). An attorney's representation violates the Sixth Amendment right to the effective assistance of counsel if the representation "'fell below an objective standard of reasonableness,'" and prejudice is shown if "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Andrus, 140 S. Ct. at 1881 (quoting Strickland, 466 U.S. at 688, 694).

In assessing counsel's performance, the court presumes that counsel's representation "was within the wide range of reasonable professional assistance," and may conclude that counsel's representation was deficient "only where given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Quintanilla, 86 F.4th at 17. A criminal defendant's "failure to satisfy one prong of the Strickland analysis obviates the need

for a court to consider the remaining prong." Tevlin v.
Spencer, 621 F.3d 59, 66 (1st Cir. 2010).

### 1.    Failure to Move for Recusal of Judge Houran

In Claim 6(b), Davis asserts that Attorney Swenson's
failure to move for Judge Houran's recusal in his criminal case
violated his Sixth Amendment right to the effective assistance
of counsel. Davis also asserted that claim in a motion for a new
trial he filed in the SCSC.

Attorney Swenson testified at the SCSC hearing on that
motion. Crim. Case, Apr. 12, 2018 Order, 1 (doc. no. 8-2, at
44). The hearing was held before Judge Temple, who presided over
Davis's criminal trial.  Attorney Swenson testified that he and
Davis had discussed whether to seek Judge Houran's recusal, and
that Davis told Attorney Swenson he did not want to file a
recusal motion against that judge. Id. at 1-2 (doc. no. 8-2, at
44-45). In his decision denying the motion for a new trial,
Judge Temple noted the absence of any evidence that Judge Houran
had a conflict with Davis personally. Id. at 9 (doc. no. 82, at
52).

Here, Davis does not point to any evidence in the record
which shows that Attorney Swenson provided him with
constitutionally deficient representation by failing to move for
Judge Houran's recusal. Further, he provides no evidence that he

suffered any prejudice because Judge Houran was not recused earlier in the case.

Accordingly, Claim 6(b) fails to provide a basis for granting the § 2254 petition. The District Judge should grant the Warden's motion for summary judgment as to that claim.

### 2. Failure to move to sever charges

In Claim 6(c), Davis contends that Attorney Swenson provided him with ineffective assistance, in violation of the Sixth Amendment, by failing to move to sever the traffic charges from the witness tampering charges, or failure to adequately object to the joinder of those charges for trial. When the issue of joinder arose prior to trial, Attorney Swenson initially argued at a hearing that the traffic charges should not be joined with the witness tampering charges. See July 21, 2014, Mots. Hr'g Tr., 12. Attorney Swenson testified at the hearing on the motion for a new trial that he later consulted with Davis about consolidating the charges, and "they made the 'strategic decision' to 'try those two cases together for various reasons.'" Crim. Case, Apr. 12, 2018 Order, 10 (doc. no. 8-2, at 53) (citation omitted). Attorney Swenson testified that he and Davis decided together that by not objecting to joinder, "'[they] would be able to go forward with [their] defense and argue consistently against all of the charges in a more

27

effective manner.'" Id. (citation omitted).

The evidence in the summary judgment record shows that Attorney Swenson made a strategic choice, with Davis's agreement, not to seek severance of the charges. Davis has not shown that the decision not to move to sever the traffic charges from the witness tampering charges was unreasonable, or that he was prejudiced by trying the charges together.

Accordingly, Claim 6(c) fails to provide a basis for granting the § 2254 petition. The District Judge should grant the Warden's motion for summary judgment as to that claim.

### 3.   Closing Argument

In Claim 6(d), Davis contends that Attorney Swenson provided ineffective assistance by not discussing the evidence of the two dismissed witness tampering charges in his closing argument, to show that Davis was not guilty of the remaining witness tampering charges. In Claim 12, Davis faults Attorney Swenson for failing to preserve that issue for appeal.

The court's review of the summary judgment record demonstrates that, Attorney Swenson did raise and preserve the issue of using the dismissed charges as examples of what conduct does not constitute witness tampering, but Judge Temple denied

his request to make that argument.[8] Dec. 12, 2014 Trial Tr., Vol. V, 937-38. Attorney Swenson complied with the court's ruling not to utilize the dismissed charges to make an argument for Davis's acquittal on the remaining charges. Following the trial judge's order not to make certain arguments in closing does not show representation below a reasonable level of competence and does not demonstrate that trial counsel provided ineffective assistance.

Moreover, it is unlikely that, if the issue were raised on appeal, the NHSC would have found the limitation on Attorney Swenson's closing to be reversible error, in light of the closing argument that Attorney Swenson actually made, which included the arguments and theory of defense which the dismissed charges would purportedly have supported, and in light of the broad discretion of trial courts to limit the parties' closing arguments, see Herring, 422 U.S. at 853, 862, and the NHSC's decision on direct appeal which found "no error" in the trial court's reasons for instructing the jury not to draw inferences from the dismissal of the charges. Davis I, 2016 N.H. LEXIS 49, at *6, 2016 WL 3947388, at *3.

As to Claim 12, Davis has not demonstrated that he was

---

[8] It appears that the evidence of Attorney Swenson's request to include an argument concerning the dismissed witness tampering charges in his closing argument was not in the record before the NHSC in Davis's direct appeal.

prejudiced by Attorney Swenson's failure to preserve for appeal the denial of his request to discuss the dismissed charges in his closing argument. As noted above, the record reflects that Attorney Swenson did in fact raise and preserve that issue for appeal.  See id.

Accordingly, Claims 6(d) and 12 fail to provide a basis for granting the § 2254 petition. The district judge should grant the Warden's motion for summary judgment as to those claims.

### 4. Failure to seek removal of juror

In Claim 6(f), Davis contends that Attorney Swenson provided constitutionally deficient representation by failing to request that Boucher be removed from the deliberating jury. Davis has not shown, however, that Attorney Swenson had any reason to be concerned about Boucher's participation in jury deliberations. Nothing in the record shows that either the trial court or the lawyers understood why Boucher had not responded initially when the court called out several variations and/or mispronunciations of her name, and that everyone involved believed that there had been some mistake. As discussed above, Boucher, like the other jurors empaneled in Davis's criminal case, went through the entire voir dire process, and is thus presumed to have been impartial. Davis has not pointed to any evidence to counter that presumption.

30

Davis has therefore failed to show that Attorney Swenson's failure to seek Boucher's removal constitutes ineffective assistance of counsel in violation of the Sixth Amendment. Moreover, Davis has not identified anything in the summary judgment record which demonstrates that he was prejudiced by the inclusion of Boucher in his deliberating jury.

Accordingly, Claim 6(f) fails to provide a basis for granting the § 2254 petition.  The District Judge should grant the Warden's motion for summary judgment as to that claim.

### 5.   Psychiatric Records at Sentencing

In Claim 6(g), Davis argues that he suffered a violation of his right to the effective assistance of counsel at his sentencing hearing, as Attorney Swenson, at that hearing, did not provide the court with certain of Davis's available mental health records. In particular, Davis asserts that then-recent mental health records, had Attorney Swenson provided them to the trial court, would have shown that Davis had been diagnosed with serious mental health conditions which were not reflected in the records that Attorney Swenson submitted with his sentencing memorandum in support of his sentencing recommendation.

Attorney Swenson submitted a sentencing memorandum on Davis's behalf that included information about Davis's mental health, and argued for sentence mitigation based on Davis's

mental health problems at the sentencing hearing. That argument
was apparently persuasive because the court denied the sentence
enhancement the State had requested. Further, at a state court
hearing on Davis's ineffective assistance of counsel claims,
"Attorney Swenson explained . . . that he did not make mental
health the sole focus of his sentencing argument because he
believed that it was important for Judge Temple to see that the
defendant was taking responsibility for his actions, and not
trying to evade culpability." Crim. Case, Apr. 12, 2018 Order,
at 15 (doc. no. 8-2, at 58).

Davis has not shown that Attorney Swenson's strategic
choice to submit Davis's mental health issues, but not to
overemphasize those issues, at Davis's sentencing hearing was
objectively unreasonable.  And, in light of the fact that
"Attorney Swenson persuaded the [sentencing] Court that
[Davis's] mental health struggles made applying the statutory
extended term, as suggested by the State, inappropriate," he
cannot demonstrate that he was prejudiced by Attorney Swenson's
failure to provide additional mental health records to the
sentencing court. Id.

Accordingly, Claim 6(g) fails to provide a basis for
granting the § 2254 petition. The District Judge should grant
the Warden's motion for summary judgment as to that claim.

### 6. Ineffective assistance of appellate counsel

In Claims 11(a) and 11(b), Davis alleges that Attorney Johnson failed to provide him with effective assistance of counsel in the direct appeal of his criminal convictions. Davis cites Attorney Johnson's failure to litigate two ineffective assistance of trial counsel claims in the direct appeal, which Davis considers to be stronger claims than the claims Attorney Johnson actually litigated.

To show ineffective assistance of appellate counsel due to a failure to brief a particular issue, a petitioner generally must show that the "'ignored issues are clearly stronger than those presented.'" Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)). The NHSC, however, generally disfavors the litigation of ineffective assistance of trial counsel claims on direct appeal.  See State v. Grande, 168 N.H. 487, 490-91, 131 A.3d 399, 401-02 (2016). Attorney Johnson's decision not to raise ineffective assistance of counsel claims on direct appeal was a strategic decision in line with NHSC precedent, and not substandard representation. See Robbins, 528 U.S. at 288 (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). In addition, Davis cannot show he was prejudiced by that strategic decision, because he was able to

raise ineffective assistance claims in post-conviction proceedings after his direct appeal ended. See, e.g., Dec. 20, 2021 Order, 1, Davis, No. 217-2021-CV-00445 (N.H. Super. Ct., Cöos Cty.) (doc. no. 59-3, at 1).

Accordingly, Claims 11(a) and 11(b) fail to provide a basis for granting the § 2254 petition. The District Judge should grant the Warden's motion for summary judgment as to those claims.

## Certificate of Appealability

Petitioner has failed to make a substantial showing of the denial of any constitutional right, and no jurists of reason would find it debatable whether this court's assessment of the constitutional claims or procedural rulings are correct. Therefore, the district judge should decline to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Rule 11, Rules Governing § 2254 Cases; First Cir. LR 22.0; see also See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends as follows:

     1.   that the District Judge GRANT the Warden's motion for summary judgment (Doc. No. 97);

2.   that the District Judge DISMISS Davis's petition for a writ of habeas corpus;

3.   that the District Judge deny a certificate of appealability; and

4.   that the District Judge direct the Clerk's office to enter judgment and close this case.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  The objection period may be extended upon motion.  Failure to file any objection within the specified time waives the right to appeal the district court's Order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).  Only those issues raised in the written objections "'are subject to review in the district court,'" and any issues "'not preserved by such objection are precluded on appeal.'"  Id. (citations omitted).


Andrea K. Johnstone
United States Magistrate Judge

February 27, 2024

cc:  Rick Davis Sr., pro se
     Elizabeth C. Woodcock, Esq.